IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROBERT C. GOMEZ                                                           PLEADING

V.                                      NO. 14-3085

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

## **MEMORANDUM OPINION**

Plaintiff, Robert C. Gomez, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current application for DIB on September 14, 2011, alleging an inability to work since September 1, 2009, due to diabetes, hypertension, neuropathy, and anxiety. (Tr. 146-152, 165, 169). An administrative hearing was held on February 5, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 64-91).

By written decision dated June 14, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – diabetes mellitus, diabetic neuropathy, and essential hypertension. (Tr. 51). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did

1

not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 52). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to climb ramps and stairs frequently but never ladders, ropes or scaffolds. He can balance, stoop, kneel, crouch and operate foot controls occasionally but never crawl. The claimant is able occasionally to work overhead and reach using his left upper extremity and frequently handle and finger bilaterally.

(Tr. 52). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff could perform such jobs as cashier II, poultry production line worker, and production line assembler. (Tr. 56).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional information, and denied that request on August 11, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 9). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards

v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able

to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.   Discussion:

Plaintiff raises the following issues in this matter:  1)  Whether the ALJ erred in his RFC determination; and 2) Whether the ALJ was required to request further clarification from Plaintiff's treating physician, Dr. Shannon Brownfield.  (Doc. 12).

#### A.  Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

#### B.  RFC Determination:

Plaintiff argues that the ALJ erred in his RFC determination because he dismissed the findings of Plaintiff's treating physician, Dr. Shannon Brownfield.  RFC is the most a person

4

can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014).  "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of

5

such opinions.'" Id.  "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

By letter dated July 19, 2012, Dr. Brownfield addressed the fact that he received a nerve conduction study of Plaintiff's lower extremities, which indicated severe neuropathic changes to his legs from the knees down, which caused him problems with discomfort that was consistent with neuropathy and numbness to his legs. (Tr. 424).  Dr. Brownfield also noted that Plaintiff had some numbness to his hands, which he suspected was the same neuropathic process as his legs.  Dr. Brownfield concluded that Plaintiff would not be prohibited from driving at all, but would not be able to drive for any extended period of time in a seated position. (Tr. 424).  He also opined that Plaintiff would be prohibited from any work where he would be on his legs either standing or walking for any significant period of time, and that he would have to have a sedentary type of job. (Tr. 424).  On January 21, 2013, Dr. Brownfield completed a Medical Source Statement, wherein he opined Plaintiff would be able to stand and/or walk less than two hours in an eight hour workday and could sit less than about six hours in an eight hour workday. (Tr. 469-470).  He also found Plaintiff was limited in his lower extremities and in fingering and feeling, because of neuropathy, and had certain postural and environmental limitations. (Tr. 470).

In his decision, the ALJ stated that he considered Dr. Brownfield's opinions, and gave them some weight. He further stated:

> Notably, Dr. Brownfield's limitations are more severe than appears corroborated by his own records. Clinic notes failed to show consistent complaints of leg pain notwithstanding nerve conduction testing in July 2012, which indicated severe neuropathic changes. Although, after receiving these results, Dr. Brownfield added Lyrica to the claimant's regimen of medications, which also included Norco.

6

(Tr. 55).

A review of the record reveals Plaintiff sought medical care one time in 2007 (Tr. 401); two times in 2008 (Tr. 276-277); no times in 2010; and one time in 2011. (Tr. 268). He then had frequent visits in 2012. In 2007, a gastroenterology consult was requested from Dr. Michael L. Rogers, who reported that it was important to understand that Plaintiff was a truck driver and "continues to consume alcohol on a copious basis with six to eight beers per day" and was "now using marijuana on a regular basis." (Tr. 401). He further noted that Plaintiff's triglycerides varied from 1700 to 6000 and cholesterols were in the several hundred to few thousand range. Plaintiff's glucose levels had been in the 300 range persistently and Plaintiff was "taking no medication for it despite it being prescribed." (Tr. 401). Dr. Rogers noted that Plaintiff was gaining weight, not watching his diet, and "making essentially no lifestyle changes at this point to positively affect any of his known underlying illnesses." (Tr. 401). Dr. Rogers believed Plaintiff's abdominal discomfort appeared to be early neuropathy related to uncontrolled diabetes, and that his ruddy complexion as well as his uncontrolled diabetes and uncontrolled hypertriglyceridemia were related to his uncontrolled alcohol abuse. (Tr. 402). He concluded no further GI work was warranted, that Plaintiff needed to stop alcohol and drug use, get on a reasonable diet, lose weight, and follow up with his primary care physician. (Tr. 402).

On July 1, 2009, Plaintiff's treating physician, Dr. Mahlon O. Maris, assessed Plaintiff with diabetes II, hyperlipidemia, peripheral neuropathy, and fatigue. (Tr. 273). On December 8, 2009, H. Lynn Mayo, APN, reported that Plaintiff had been "rather erratic in taking metformin and simvastatin since last ck july 09." (Tr. 271). It was also reported that Plaintiff was drinking alcohol 3-4 times daily. (Tr. 271). Almost two years later, on April 20,

2011, H. Lynn Mayo reported Plaintiff was not taking his metformin or simvastatin and had not been taking it for up to two years, because he was concerned about side effects. (Tr. 268). It was stressed that Plaintiff needed to be more aggressive in caring for his chronic diseases, and he was to restart the metformin. (Tr. 268).

On November 14, 2011, non-examining consultant, Dr. Patricia McCarron, completed a Physical RFC Assessment, wherein she concluded the medical records would support an RFC to light duty. (Tr. 292).

On February 14, 2012, Plaintiff presented to Dr. Brownfield, complaining of chest pain and stiffness. (Tr. 394). Dr. Brownfield noted that Plaintiff reported he had not been on metformin daily. (Tr. 394). Dr. Brownfield assessed Plaintiff with diabetes II unspec., hyperlipidemia, hypertension NOS, neuropathy in diabetes, and anxiety disorder NOS. (Tr. 394).

On February 19, 2012, Plaintiff presented to North Arkansas Regional Medical Center, complaining of chest pain. (Tr. 294). The record indicates that Plaintiff's extremities revealed normal inspection, normal range of motion, and normal capillary refill. (Tr. 296). Plaintiff was diagnosed with pneumonia, hyperglycemia, and diabetes mellitis type II. (Tr. 315).

On March 8, 2012, Plaintiff presented to Washington Regional Medical Center, complaining of pneumonia and empyema. (Tr. 351). It was reported at that time that Plaintiff's strength in all of his extremities was 5/5. (Tr. 353).

On April 9, 2012, Dr. Brownfield diagnosed Plaintiff with edema in his legs. (Tr. 440). On May 14, 2012, Dr. Brownfield reported Plaintiff's swelling was worse but he was "a lot better today," and was on medications as directed. (Tr. 438).

On May 22, 2012, Dr. Brownfield reported that Plaintiff had not started on Zoloft, which had been prescribed for his depression. (Tr. 436, 439).  Dr. Brownfield assessed Plaintiff with effusion of joint NOS and depression, and encouraged him to start Zoloft. (Tr. 436). On June 26, 2012, Dr. Brownfield reported that Plaintiff was well and improving with overall strength and energy and was at the gym some. (Tr. 433).  On July 11, 2012, a nerve conduction study was performed, and the findings were consistent with: unremarkable for significant radiculopathic processes and severe polyneuropathic processes involving bilateral lower extremities with marked motor and sensory axon loss below the ankle and mild to moderate axon loss in musculature distal to the knees. (Tr. 426).

It is clear from the records that Plaintiff has consistently failed to be compliant with treatment recommendations by his treating physicians, which can constitute evidence that is inconsistent with a treating physician's medical opinion.  Wildman v. Astrue, 596 F.3d 959, 965-66 (8TH Cir. 2010).  Giving controlling weight to Plaintiff's treating physician's opinions in this case would not be required because at times their diagnoses were given when Plaintiff was not following the prescribed treatment plan.  See Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014).  In fact, when Plaintiff was on medications as directed, on May 14, 2012, Dr. Brownfield reported that the swelling was worse "but a lot better today." (Tr. 438).  In addition, on December 20, 2012, a month before Dr. Brownfield completed his Medical Source Statement, Dr. Brownfield reported that Plaintiff was being "too active" and that family and friends commented he was too hyper. (Tr. 464).

The Court has reviewed the additional evidence considered by the Appeals Council, which was submitted and dated after the ALJ's decision.  When the Appeals Council has considered material new evidence and nonetheless declined review, the ALJ's decision

9

becomes the final action of the Commissioner.  The Court then has no jurisdiction to review the Appeals Council's action because it is a nonfinal agency action.  See Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir.1992). At this point, the Court's task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence made part of the record by the Appeals Council that was not before the ALJ.  As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." Riley v. Shalala, 18 F.3d 619, 622 (8th Cir.1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This requires the Court to speculate on how the ALJ would have weighed the newly submitted evidence had it been available at the initial hearing. Flynn v. Chater, 107 F.3d 617, 621 (8th Cir.1997).  Thus, the Court has endeavored to perform this function with respect to the newly submitted evidence.

The ALJ issued his decision on June 14, 2013. (Tr. 49-57).  The evidence considered by the Appeals Council is dated October 22, 2013 (Tr. 22), October 28, 2013 (Tr. 18), November 13, 2013 (Tr. 19), November 21, 2013 (Tr. 20), April 18, 2014 (Tr. 16)-17), July 18, 2014 (Tr. 7), and July 18, 2014 (Tr. 12), all of which reflected Plaintiff's condition as of those dates, and is beyond the scope of judicial review. See Probst v. Colvin, No. 4:12CV439AGF(FRB), 2013 WL 950996 at *13 (E.D.Mo. Feb. 22, 2013) citing Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992)("Where evidence obtained subsequent to the ALJ's decision is at odds with the evidence before the ALJ, such evidence may reflect only a post-hearing deterioration in a claimant's mental condition, which is beyond the scope of judicial review").

In addition, Plaintiff has failed to give sufficient reasons for the ALJ to obtain clarification from Dr. Brownfield, since he discounted his opinion. See Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the opinions of the various medical providers.

### C. Hypothetical Question:

On February 8, 2013, the VE addressed the following hypothetical questions submitted to him by the ALJ:

Interrogatory No. 1:

Assume an individual with the same age, education, and work experience as outlined above where the individual is able to perform work at light exertional limitations; where the individual is able to climb ramps and stairs frequently; climb ladders/ropes/scaffolds never; balance, stoop, kneel and crouch occasionally crawl never; foot control operation, bilaterally, is occasional; overhead reach on the left is occasional; handle and finger, bilaterally, is frequent. Could an individual with these limitations perform claimant's past work as it was actually performed or as it is customarily performed pursuant to the DOT?

A: no past work was medium

Interrogatory No. 2: Assume an individual with the same age, education, and work experience as above with the RFC previously described in Interrogatory No. 1, would there be any jobs this individual could perform that exist in the national or regional economies? If so, please give the number of said jobs.

A: Yes: Cashier II; poultry production line worker; production line assembler.

(Tr., 251).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the vocational expert

11

fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as cashier II, poultry production line worker, and production line assembler. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.    Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 8th day of December, 2015.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE